**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**JOSEPH THOMPSON,**

                                                    **Petitioner**

     **vs.**                                               **8:23-CR-257**
                                                       **8:25-CV-1189**
**UNITED STATES OF AMERICA,**                          **(MAD)**

                                                    **Respondent.**

---

**APPEARANCES:**                        **OF COUNSEL:**

**JOSEPH THOMPSON**
62864-510
Allenwood Low Federal
Correctional Institution
P.O. Box 1000
White Deer, Pennsylvania 17887
Petitioner, *Pro se*


**OFFICE OF THE UNITED**              **MATTHEW J. MCCROBIE, AUSA**
**STATES ATTORNEY**                   **NICOLAS COMMANDEUR, AUSA**
100 South Clinton St.
Syracuse, New York 13261
Attorneys for Respondent


**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

On July 12, 2024, Defendant-Petitioner Joseph Thompson ("Petitioner") pled guilty to a

two-count Indictment charging him with possession with intent to distribute a controlled

substance, in violation of Title 21, United States Code, Section 841(b)(1)(D) (Count One), and

possession of a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United

1

States Code, Section 924(c)(1)(A)(i) (Count Two). *See* Dkt. No. 20; *see also* Text Minute Entry 07/12/2024. On December 19, 2024, Petitioner was sentenced to a term of imprisonment of six months on Count One and sixty months on Count Two, to run consecutively. *See* Dkt. No. 46 at 2; *see also* Text Minute Entry 12/19/2024. Petitioner was also sentenced to three years supervised release upon release from imprisonment on each of Counts One and Two, to be served concurrently. *See* Dkt. No. 46 at 3. Petitioner did not appeal his conviction or sentence.

Currently before the Court is Petitioner's motion, filed pursuant to 28 U.S.C. § 2255, which seeks vacatur of his conviction. *See* Dkt. No. 51. In the motion, Petitioner contends that his counsel was ineffective for (1) failing to request a competency hearing and (2) allowing him to plead guilty to Count Two when the facts could not support the conviction. *See id.* at 2-6. The Government ("Respondent") responded in opposition, and Petitioner replied. *See* Dkt. Nos. 62, 64. For the reasons set forth below, Petitioner's motion is denied.

## II. DISCUSSION

**A.    Standard of Review**

Section 2255 of Title 28 of the United States Code states, in relevant part, that

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Relief under section 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Graziano v. United States*,

83 F.3d 587, 590 (2d Cir. 1996) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)). (internal quotation marks omitted).  Moreover, a movant under section 2255 is barred from relitigating questions "which were raised and considered on direct appeal," *Riascos- Prado v. United States*, 66 F.3d 30, 33 (2d Cir. 1995) (citations and internal quotation marks omitted), as well as any issue he could have raised on direct appeal, whether he actually raised it on appeal or not, *see Abbamonte v. United States*, 160 F.3d 922, 924 (2d Cir. 1998) (citation omitted).

The district court has the authority to dismiss a motion to vacate under section 2255 without a hearing if the record conclusively demonstrates that the petitioner is not entitled to relief.  *See Pham v. United States*, 318 F.3d 178, 184 (2d Cir. 2003).  Further, "'[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.'"  *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (quoting Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b)).

As Petitioner has brought the present motion *pro se*, the Court construes his submissions liberally and interprets them to raise the strongest arguments that they suggest.  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (collecting cases).

**B.    Ineffective Assistance of Counsel**

Petitioner contends that his conviction and sentence should be vacated because his counsel was ineffective for (1) failing to request a competency hearing and (2) allowing him to plead guilty to a charge where his guilt was a legal impossibility.  *See* Dkt. No. 51 at 2-6.  As Respondent correctly notes, Petitioner does not claim he was actually incompetent at the time of his plea hearing or at any other relevant time; instead, his argument is that his counsel was

infective for failing to raise the question of his incompetence and failing to request a competency hearing. *See* Dkt. No. 62 at 13.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. XI. "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (citations omitted).

In assessing a claim that the habeas petitioner has been denied the effective assistance of counsel to which he is entitled under the Sixth Amendment, courts apply the standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that standard, the petitioner

> "must meet a two-pronged test: (1) he 'must show that counsel's performance was deficient,' . . . so deficient that, 'in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance' . . . ; and (2) he must show 'that the deficient performance prejudiced the defense,' . . . in the sense that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]'"

*Matthews v. United States*, 682 F.3d 180, 186 (2d Cir. 2012) (quoting *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011)) (internal citations omitted).

As to the first prong of *Strickland*, attorney conduct is subject to an objective standard of reasonableness, and is accorded deference in light of the "range of legitimate decisions" that accompanies the various circumstances encountered by counsel. *See Strickland*, 466 U.S. at 688-89. As a result, reviewing courts are required to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that

4

there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." *United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689) (alterations and internal quotation marks omitted).

As to the second prong of *Strickland*, a petitioner must show that, but for his or her attorney's deficient performance, there is a reasonable probability that the result would have been different. *See Strickland*, 466 U.S. at 694. More is required than a mere showing "that the errors had some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693.

"The *Strickland* standard is 'highly demanding,' . . . and 'rigorous[.]'" *Bennett*, 663 F.3d at 85 (citations omitted). An ineffective assistance of counsel claim "must be rejected if the defendant fails to meet either the performance prong or the prejudice prong." *Id.* (citation omitted).

### 1. *Competence to Enter Guilty Plea*

As the Supreme Court has explained, "[a] criminal defendant may not be tried unless he is competent[,] . . . and he may not . . . plead guilty unless he does so 'competently and intelligently[.]'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (citations omitted).

> [A]t any time prior to sentencing the district court upon its own motion, or that of the defense or prosecution, shall order a hearing to determine the mental competency of the accused "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."

5

*United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986) (quoting 18 U.S.C. § 4241(a)).

"The two-prong test for competency asks 'whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *United States v. Brennan*, 928 F.3d 210, 215-16 (2d Cir. 2019) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). "It is well-established that some degree of mental illness cannot be equated with incompetence to stand trial."[1] *Vamos*, 797 F.2d at 1150 (citation omitted).

Here, there is compelling evidence in the record that petitioner was competent to enter his guilty plea. At Petitioner's plea hearing, the Court carefully examined this subject: In response to questions from the Court, Petitioner testified that was not currently being treated for any mental health issues, had not taken any narcotics, drugs or alcohol within the last twenty-four hours, and answered "Yes, your Honor" when the Court asked, "Are you fully able to understand the discussion that I'm having with you today?" Dkt. No. 49 at 9. The Court found Petitioner was competent and capable to enter an informed plea of guilty based on his demeanor, his colloquy with the Court, and the representations of counsel. *Id.* at 19-20.

"[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," since "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see Oliver v. United States*, No. 07-CV-5921, 2008 WL 190487, *15 (S.D.N.Y. Jan. 22, 2008) ("On habeas review, the

---

[1] Competence to stand trial and to plead guilty are measured by the same standard. *See Godinez*, 509 U.S. at 397-98 (rejecting "the notion that competence to plead guilty . . . must be measured by a standard that is higher than (or even different from) the *Dusky* standard").

Court is entitled to rely on [the statements made in open court at the time the guilty plea is entered], and they will not be set aside based on vague or conclusory allegations").

Submissions related to sentencing also support the Court's finding of competence at the plea colloquy. Before sentencing, Petitioner's counsel engaged Dr. Sanford L. Drob, Ph.D. to perform a forensic psychological examination of Petitioner. *See* Dkt. No. 44. Dr. Drob generated a report after conducting a psychological interview and testing; the report was submitted with Petitioner's sentencing memorandum. *See id.* Dr. Drob concluded, *inter alia*, that Petitioner suffered from significant life trauma and "is a multiply impaired defendant, whose intellectual functioning is significantly below average . . . ." *Id.* at 9. However, Dr. Drob also concluded that "while significantly below average, his verbal functioning is sufficient for normal communication." *Id.* at 8. Indeed, during his psychological interview and testing, Petitioner was able to explain the nature of the charges and why he committed the offense, and had a "reasonable understanding of courtroom procedure." *See id.* at 4-5.

Accordingly, the Court, finding no reason to reverse its earlier determination, again finds that Petitioner was mentally competent at the time of his plea. *See United States v. Del Carpio*, 63 Fed. Appx. 539, 540-41 (2d Cir. 2003) (summary order) (finding no error in district court decision not to hold competence hearing where psychiatric examination confirmed that the defendant was not suffering from a mental disease or defect rendering him incompetent and the defendant's responses to the district court's questioning at the plea hearing "were not such as to undermine the court's finding that he was competent") (citations omitted).

The Court's above determination that Petitioner was competent at the time he pled guilty "forecloses a finding that" his attorney was "unreasonably deficient in reaching the same conclusion." *United States v. Jude*, No. 15-CR-355, 2019 WL 3500284, *4 (S.D.N.Y. Aug. 1,

2019) (citing *Del Carpio*, 63 Fed. Appx. at 541). Indeed, Respondent has submitted a declaration from Geoffrey S. Stewart, Esq., the attorney that represented Petitioner from the time "shortly after his arrest" through his guilty plea and sentencing. Dkt. No. 62-1 at ¶ 5. In his declaration, Mr. Stewart confirms that Petitioner appeared competent throughout the entirety of the representation; the declaration states, in relevant part as follows:

> In all my interactions with Mr. Thompson I never had any difficulty communicating with him. We discussed everything from the facts of the alleged offenses, his life history, his prior legal history, the charges he faced and punishments permitted by law, and his options going forward. I also enlisted a colleague to assist with compiling Mr. Thompson's personal history and letters of support from his family, friends and the community. My colleague never indicated any impediments or difficulties communicating with Mr. Thompson. He was always polite, rational and appeared to comprehend the information we conveyed to him. He asked relevant questions and appeared satisfied with our responses. Without question he understood the roles of all the parties in a criminal matter; he understood the charges and his options in resolving the criminal charges against him.
>
> The decision to have Mr. Thompson evaluated by a psychologist, retained by the defense, was to assist the defense and ultimately the court in understanding some of the challenges faced by Mr. Thompson in his life which explain his lack of judgment leading up to his arrest. There was nothing in the psych report to suggest to myself that Mr. Thompson was so severely cognitively impaired that he might be incompetent. Even the possibility of a client who seems unable to communicate or collaborate with me, or seems unable to appreciate and understand the basics of our system, would prompt me to request a hearing to determine his/her competency. Nothing in my interactions with and observations of Mr. Thompson, nothing in the psych report, and nothing in the many letters submitted on his behalf caused me to even consider that he was incompetent to stand trial, enter a guilty plea and/or be sentenced.

*Id.* at ¶¶ 5-6.

Aside from conclusory allegations and self-serving statements, Petitioner has not offered any evidence that undermines his sworn statements before this Court or the conclusions of the

8

Court and Petitioner's counsel as to his competency at the time he pled guilty.  The mere fact that counsel and the Court were aware that Petitioner suffered from some cognitive limitations does not mean that a competency hearing was warranted  *See Coleman v. Rick*, 281 F. Supp. 2d 549, 558 (E.D.N.Y. 2003) ("Petitioner has provided no evidence that he was not competent to plead; evidence of his learning disability does not suffice . . . .  Because petitioner has not demonstrated that he was not competent to plead guilty, and because counsel had no reason to believe petitioner incompetent, counsel's representation in this regard was not ineffective").  For these reasons, Petitioner has failed to rebut the strong presumption that his counsel's performance was adequate.

Moreover, Petitioner has not established any prejudice.  As discussed, Petitioner's statements and actions in open court indicated his clarity of mind, and therefore, a request for a competency hearing would not have altered the course of his case.  *See Guzman v. United States*, No. 13-CV-06806, 2015 WL 1137533, *4 (S.D.N.Y. Mar. 12, 2015) ("Guzman first claims that his counsel was ineffective due to her failure to research Guzman's mental health history and a corresponding failure to request a competency hearing.  This claim fails because, as discussed, it is evident that Guzman was lucid at his guilty plea hearing.  Because Guzman's own statements and actions in open court indicated his clarity of mind, a competency hearing would not have altered the course of his case").

For these reasons, even construing Petitioner's submissions to raise the strongest arguments they suggest, Petitioner's has failed to satisfy either prong of the demanding *Strickland* test.

### 2. *Factual and Legal Basis for Count Two*

Petitioner also contends that his counsel was ineffective because he "allowed and thus encouraged … Petitioner to enter a plea of guilty to a charge that was statutorily impossible to

9

prove." Dkt. No. 51 at 4. The charge that Petitioner takes issue with is his conviction for possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). *See id.* at 3-6. Relying on *Watson v. United States*, 552 U.S. 74, 83 (2007), and *United States v. Gardner*, 602 F.3d 97, 99 (2d Cir. 2021), Petitioner argues that the transaction in this case, which involved the transfer of firearms as payment for drugs, does not constitute possession of a firearm in furtherance of a drug trafficking offense under § 924(c). *See id.* The Court agrees with Respondent that Petitioner's claim is premised on a misunderstanding of the law. *See* Dkt. No. 62 at 17-21.

As to Petitioner's conviction under § 924(c)(1)(A)(i), when asked what the Government would prove if this case had gone to trial, the prosecution stated as follows at the plea hearing:

> [T]he government would have been required to prove the defendant committed a drug trafficking crime for which he may be prosecuted in a court of the United States. And two, the defendant knowingly possessed the firearms in furtherance of a drug trafficking crime.
>
> At trial, your Honor, those elements would have been proved by the following, in sum and substance: that in April 2023 the defendant discussed a potential sale of marijuana in exchange for firearms with an individual who, unbeknownst to the defendant, was an undercover law enforcement officer.
>
> In subsequent discussions, the defendant and the undercover officers agreed to finalize the transaction on June 7th, 2023, and on or about June 7th, 2023, the defendant met the undercover officer at a parking lot in Massena, New York.
>
> The undercover showed the defendant a shoebox containing seven firearms and firearm ammunition magazines. The firearms [were] semiautomatic pistols which, unbeknownst to the defendant, had firing pins that were filed down but which could have been readily converted back to operating condition by replacing those firing pins.

10

> The defendant then told the undercover that the defendant was a "middle guy" and that he had contact in Montreal who would pay approximately [$]2,000 to $2,300 for each firearm.
>
> The defendant completed the transaction and gave the undercover approximately 18 pounds of marijuana in exchange for the seven firearms and ammunition magazines.
>
> Law enforcement seized the defendant and the firearms shortly after the defendant completed the transaction with the undercover officer.

Dkt. No. 49 at 12-13.

The Court then asked, "Mr. Thompson, you just heard what the government said they could prove if the case had gone to trial. Is that what you did and what occurred in this case?" Petitioner responded, "Yes, your Honor." *Id.* at 13. Petitioner's counsel also advised the Court that was his understanding. *See id.*

In *Watson v. United States*, the Supreme Court held that a person who receives a firearm in trade for drugs cannot be convicted under the "use" prong of § 924(c). *See Watson*, 552 U.S. at 79. However, as the Second Circuit subsequently explained in *United States v. Gardner*, "[i]n 1998, Congress amended [§] 924(c)(1) to add the 'possession in furtherance' prong[,]" which now means that "a defendant violates [§] 924(c)(1)(A) if he 'possesses a firearm' 'in furtherance of . . . [a] drug trafficking crime.'" *Gardner*, 602 F.3d at 101 (citations omitted). Based upon this statutory amendment, the Second Circuit held "that when a defendant acquires a firearm using drugs as payment, he possesses that firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)." *Id.* at 103. In so holding, the Second Circuit explained that "[w]hether a person who acquires a gun with drugs does so in order to obtain the gun . . . or to sell drugs, that person furthers the sale of the drugs by possessing the gun . . . ." *Id.*

11

Petitioner contends that although Mr. Stewart cited *Watson* and *Gardner* in Petitioner's sentencing memorandum, *see* Dkt. No. 43 at 15 n.12, Mr. Stewart failed to recognize that Petitioner could not be convicted under § 924(c)(1)(A)(i), *see* Dkt. No. 51 at 3-5.  According to Petitioner, Mr. Stewart "failed to advise [Petitioner] that an argument existed regarding § 924(c)(1)(A) could have been successful at trial."  *Id.* at 5.  However, Petitioner misunderstands *Watson* and *Gardner* and their applicability to his case.

Petitioner pled guilty to the "possession in furtherance" prong of § 924(c)(1)(A), not the "use" prong.  *See* Dkt. No. 20 at 1-2; Dkt. No. 49 at 12-13.  As Respondent correctly notes, Mr. Stewart cited *Watson* and *Gardner* in the sentencing memorandum "not to claim that [Petitioner] could not have committed the offense as charged, but rather to argue that the Court should view the nature and circumstances of [Petitioner's] offense in mitigation when imposing sentence."  Dkt. No. 62 at 18.  Indeed, Mr. Stewart's decision not to argue that Petitioner did not violate § 924(c) is amply supported by case law.  As many courts have observed, "trading a gun for drugs does indeed amount to 'possession of a firearm in furtherance of a drug trafficking crime.'"  *United States v. Salazar*, No. 15-CR-6044, 2024 WL 1640947, *3 (W.D.N.Y. Apr. 16, 2024) (citation omitted); *see United States v. Ferreira*, No. 17-CR-6138, 2022 WL 1539545, *12 (W.D.N.Y. May 16, 2022) ("[R]eceiving a gun in trade for drugs amounts to possession of a firearm in furtherance of a drug trafficking crime") (citing *Gardner*, 602 F.3d at 99); *Johnson v. Johns*, No. 10-CV-904, 2013 WL 504446, *2 (E.D.N.Y. Feb. 5, 2013) ("[T]he conduct to which petitioner pleaded guilty (providing cocaine base to a straw purchaser in exchange for a firearm) constitutes a violation of [§] 924(c)(1)(A), and petitioner's guilty plea to Count One of the Information is not constitutionally invalid").

Simply stated, the conduct to which Petitioner pled guilty was a violation of §

924(c)(1)(A).  Mr. Stewart's representation was not deficient in this regard—to the contrary, the

Court finds that he aptly stated the law and zealously offered mitigating distinctions to assist

Petitioner in obtaining a more favorable sentence.[2]

Ultimately, Petitioner's attorney was not required to raise legal arguments that were

unlikely to succeed.  *See Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) ("The law does not

require counsel to raise every available nonfrivolous defense").  It was not deficient

representation for counsel to neglect to inform Petitioner of legally unsound arguments.  *See*

*United States v. Raghoonanan*, No. 5:12-CR-00158-CR-1, 2018 WL 1084053, *8 (D. Vt. Jan. 10,

2018), *R&R adopted*, 2018 WL 1083500 (D. Vt. Feb. 26, 2018) (finding the petitioner could not

satisfy either *Strickland* prong because "*Watson* does not apply to a conviction for possessing a

firearm in furtherance of a drug trafficking crime," and the petitioner's attorney "was under no

obligation to raise legal arguments that were unlikely to succeed") (citations omitted).  Petitioner's

*Watson*/*Gardner* argument fails to meet either prong of the *Strickland* test.

### 3. *Remaining Arguments Related to Count Two*

Petitioner also contends that Mr. Stewart should not have permitted him to plead guilty to

Count Two because (1) the firearms were inoperable; and (2) Petitioner did not "possess" the

firearms because he "never inspected or touched . . . or exert[ed] control [over the firearms] in the

transaction."  Dkt. No. 51 at 4.  And, in his reply brief, Petitioner expands upon the latter

argument, contending that because he "sought cash, not guns" and law enforcement "introduced

---

[2]  According to the Presentence Investigation Report, the guidelines imprisonment range was 10 to 16 months on Count One, plus a mandatory consecutive 5 years on Count 2.  *See* Dkt. No. 39 at ¶ 55.  The Government argued for an above-guidelines sentence of 84 total months.  *See* Dkt. No. 42 at 1.  But, ultimately, this Court sentenced Defendant to a *below* guidelines sentence of 6 months on Count One plus 5 years on Count Two.  *See* Dkt. No. 46.

the guns into the transaction," it was the Government, not Petitioner, who "used the guns 'in furtherance[.]'" Dkt. No. 64 at 2-3. In the same vein, Petitioner also claims that Mr. Stewart was ineffective for failing to recognize Petitioner's role in the firearms transaction was merely passive and that the UC's introduction of firearms into the deal constituted entrapment. *See id.* The Court will address these arguments in turn.

### i. The firearm need not be operable

As to the first argument, Respondent acknowledges that the firearms Petitioner took possession of were rendered unable to fire because the firing pins were filed down. *See* Dkt. No. 62 at 19-20. However, whether the firearms were immediately operable is of no consequence under the facts of the present matter.

For purposes of § 924(c),[3] "firearm" is defined, in relevant part, as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." 18 U.S.C. § 921(a)(3)(A). Thus, the Second Circuit has found that "an inoperable pistol is a firearm within the meaning of § 921(a)(3)[,]" *United States v. Rivera*, 415 F.3d 284, 286 (2d Cir. 2005), and courts have concluded that "'[t]here is no prerequisite that [a] gun be operable to be a "firearm" under 18 U.S.C. § 924(c).'" *United States v. Perez*, No. 16-CR-49-1, 2025 WL 1568814, *5 (S.D.N.Y. June 3, 2025) (quoting *United States v. Hawkins*, No. 21-CR-414-1, 2025 WL 522502, *8 (S.D.N.Y. Feb. 18, 2025); *see also United States v. Castillo*, 406 F.3d 806, 817 n.3 (7th Cir. 2005) ("Even assuming the jury was required to conclude that the gun was in fact inoperable, it would not change our holding. There is no prerequisite that the gun be operable to be a 'firearm' under 18 U.S.C. § 924(c)") (citation

---

[3] As well as the other provisions of Title 18, Part I, Chapter 44 of the United States Code. *See* 18 U.S.C. § 921(a).

omitted); *United States v. Alkufi*, 636 Fed. Appx. 323, 329 (6th Cir. 2016) ("'[A] firearm need not be operable to satisfy the definition of firearm for purposes of 18 U.S.C. § 924(c)'") (citation omitted); *United States v. Oquendo*, No. 3:21-CR-181, 2023 WL 2753719, *1-3 (D. Conn. Apr. 3, 2023) (denying motion for judgment of acquittal on charge of possessing a firearm in furtherance of a drug trafficking crime, in violation of § 924(c)(1)(A)(i), because, *inter alia*, "it is of no consequence that the firearm was inoperable").

### ii. *Petitioner possessed the firearms*

As to the possession related arguments, Petitioner pled guilty to facts which undoubtably demonstrate he actually possessed the firearms.

As explained in the Presentence Investigation Report, there is a video recording of the transaction between Petitioner and an undercover law enforcement agent (the "UC"). *See* Dkt. No. 39 at ¶ 11. This video recording shows Petitioner: entered the UC's vehicle, discussed the transaction of trading seven firearms for marijuana, examined the firearms and firearm magazines brought by the UC, told the UC "that individuals in Montreal were paying $2,000 to $2,300 in U.S. currency for firearms in Canada[,]" consummated the transaction, exited the UC's vehicle with the firearms, and placed the firearms in the trunk of his own vehicle. *Id.* at ¶¶ 11-12.

Petitioner's inspection of the firearms he intended to purchase from the UC, exchange of marijuana for the firearms, and exercise of control of the firearms after the transaction are sufficient to find a violation of § 924(c)(1)(A)(i). *See United States v. Gaines*, 295 F.3d 293, 300 (2d Cir. 2002) (holding that videotape evidence showing the defendant holding a firearm in his hand during a controlled transaction involving the undercover sale of firearms to the defendant "was sufficient to allow a jury to find actual possession, however briefly it occurred"); *see also United States v. Harper*, 934 F.3d 524, 528 (7th Cir. 2019) (upholding conviction under § 924(c)

15

because "'[r]eceiving a gun in exchange for drugs,' as [the defendant] did when he sat in the truck and handed over most of the promised cocaine, qualifies as possession of a firearm in furtherance of a drug-trafficking crime") (citation omitted); *United States v. Gray*, No. 4:18-CR-40065, 2023 WL 5437449, *3 (C.D. Ill. Aug. 23, 2023) (rejecting actual innocence argument raised in § 2255 motion where the petitioner admitted to receiving a firearm in exchange for three grams of methamphetamine and one hundred dollars because "a defendant who receives a gun in exchange for drugs possesses a firearm in furtherance of drug trafficking and violates [§ 924(c)]") (citing *United States v. Doody*, 600 F.3d 752, 754-56 (7th Cir. 2010)).

Even assuming arguendo that Petitioner could demonstrate his attorney's representation was deficient for failing to advise him of this possession argument, Petitioner cannot show he was prejudiced merely because his counsel encouraged him to plead guilty under these circumstances. As Respondent correctly argues, if Petitioner "had elected not to plead guilty and go to trial, the jury would have been instructed on the legal definition of possession, which the evidence plainly showed that [Petitioner] met." Dkt. No. 62 at 21.

### iii. The Government's role in the transaction

The Court also finds Petitioner's arguments related to the UC's introduction of the firearm into the transaction to be meritless. In support of these arguments, Petitioner cites *United States v. Westmoreland*, 122 F.3d 431, 436 (7th Cir. 1997) and *Sherman v. United States*, 356 U.S. 369, 372 (1958).

First, *Westmoreland* pre-dates *Watson*, *Gardner*, and the 1998 amendment to § 924(c)(1). In *Westmoreland*, the Seventh Circuit held that "[w]here the defendant does nothing more than receive the gun in payment from a government agent, we cannot conclude that the defendant 'actively employed' the gun in the transaction." *Westmoreland*, 122 F.3d at 436. Thus, consistent

16

with *Watson*, according to *Westmoreland*, a defendant cannot be convicted under the "use" prong of § 924(c) under such circumstances. *See id.*; *Watson*, 552 U.S. at 79. However, as discussed, Congress amended § 924(c)(1) in 1998 to add the "possession in furtherance" prong and, accordingly, the Second Circuit held "that when a defendant acquires a firearm using drugs as payment, he possesses that firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)." *Gardner*, 602 F.3d at 103. As Petitioner was convicted under the "possession in furtherance" prong, not the "use" prong, *Westmoreland* is inapplicable.

More recent caselaw from the Seventh Circuit explains how courts treat the "possession in furtherance prong" differently than the "use" prong. Indeed, courts have found a violation of §924(c) in circumstances similar to those of this case. *See United States v. Jones*, 2016 WL 2622322, * 4 (N.D. Ill. May 9, 2016) ("[T]he [G]overnment's role in the drugs-for-guns exchange did not preclude the Court from finding that [the d]efendant possessed a firearm 'in furtherance of' a drug trafficking crime in violation of § 924(c)"). The reasoning in *Jones* is derived from Seventh Circuit precedent which holds that a defendant may be found guilty of violating § 924(c) even where the defendant distributes a controlled substance to an undercover agent in exchange for a firearm as part of a law enforcement orchestrated sting operation. *See id.* at *3-4 (citing *Doody*, 600 F.3d at 754-55 and *United States v. Dickerson*, 705 F.3d 683, 690 (7th Cir. 2013)).

As explained in *Jones*, "[i]n ruling that defendants violate § 924(c) when they receive firearms in exchange for drugs, the Seventh Circuit has not carved out scenarios in which the firearm dealer is an undercover government agent." *Id.* at *4 ("Rather, the Seventh Circuit, in both *Doody* and *Dickerson*, relied, in part, on a Tenth Circuit case in which the defendants were found guilty despite the government's sting operation similar to the one at issue") (citing *Doody*, 600 F.3d at 754-55 and *Dickerson*, 705 F.3d at 690). The Second Circuit does not appear to have

17

weighed in on whether the Government's involvement in a drugs-for-guns exchange in this manner impacts whether a defendant can be found to have possessed a firearm "in furtherance of" a drug trafficking crime.  However, this Court finds the Seventh Circuit's reasoning persuasive, especially in light of the fact that the First Circuit has also found a violation of § 924(c) where a defendant exchanged drugs for guns with a government agent.  *See United States v. Gurka*, 605 F.3d 40, 41-45 (1st Cir. 2010) (affirming district court's denial of a motion to withdraw plea to violation of § 924(c)(1)(A) and noting that "[g]iven the terms of his barter agreement with the agent, [the defendant's] possession of the gun was an essential component of the drug sale") (collecting cases).

Second, Petitioner's reliance on *Sherman* is misplaced.  In *Sherman*, the Supreme Court explicitly explained that "the fact that government agents 'merely afford opportunities or facilities for the commission of the offense does not' constitute entrapment."  *Sherman*, 356 U.S. at 372.

To successfully assert the affirmative defense of entrapment, a defendant must demonstrate, by a preponderance of the evidence, "'(1) government inducement of the crime, and (2) lack of predisposition on the defendant's part.'"  *United States v. Bala*, 236 F.3d 87, 94 (2d Cir. 2000) (quoting *United States v. Salerno*, 66 F.3d 544, 547 (2d Cir. 1995)).  Predisposition is the "'principal element'" of entrapment and "'focuses upon whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime.'"  *United States v. Cromitie*, 727 F.3d 194, 204 (2d Cir. 2013) (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)).  The government may show predisposition with evidence of

> (1) an existing course of criminal conduct similar to the crime for which [the defendant] is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged,

18

or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement.

*Salerno*, 66 F.3d at 547 (quoting *United States v. Valencia*, 645 F.2d 1158, 1167 (2d Cir. 1980)).

Here, even assuming arguendo that Petitioner's counsel decided not to pursue an entrapment defense and not to inform Petitioner of the same, such decision was reasonable given the record in this case and the low likelihood of success for asserting such a defense. *See Brito v. United States*, No. 13-CR-589, 2017 WL 3142074, *5 (S.D.N.Y. July 24, 2017) (finding "[a]ny decision" by the petitioner's attorneys not to raise the defense of entrapment "was a reasonable one given the risks associated and the low likelihood of success of such a defense. Generally speaking, entrapment defenses are rarely successful") (collecting cases); *see also Mitchell v. Scully*, 746 F.2d 951, 957 (2d Cir. 1984) (finding failure to apprise defendant of availability of affirmative defense not ineffective assistance where "counsel had every reason to think that raising the defense had almost no chance of success and would expose [the defendant] to the risk of serious additional punishment on other charges . . .").

The record in this case and Petitioner's own rendition of the underling events in his § 2255 briefing demonstrate the low likelihood of success in asserting an entrapment defense. In his reply brief, Petitioner states as follows:

> The circumstances that involved this particular transaction was the confidential informant (CI) was personally known to Mr. Thompson and to the entire population of the reservation as a gun dealer. Mr. Thompson asserts that it was the Agent and the CI who orchestrated and structured the use of guns as form of payment in lieu of cash, not Mr. Thompson. Clearly Mr. Thompson, who is not a gun dealer, had no intention to acquire guns as form of payment, but was coerced to do so trusting the CI who promised Mr. Thompson he would sell the guns and provide Mr. Thompson with the cash minus a commission for himself.

Dkt. No. 64 at 2.

19

These facts differ slightly from those Petitioner admitted to in open court when he pled guilty. *See* Dkt. No. 49 at 12-13. However, even if the Court accepted this alternative rendition of facts as true, Petitioner expressly admits that he was willing to commit the crime—he intended to sell marijuana to the UC and agreed to accept firearms instead of cash because he thought he would be able to trade the firearms to someone who could sell them for him. Petitioner, therefore, describes exactly why an entrapment defense was unlikely to succeed: even according to his own characterizations, he was an "unwary criminal who readily availed himself of the opportunity to perpetrate the crime." *Cromitie*, 727 F.3d at 204. As such, it was reasonable for Petitioner's counsel to conclude that his client had shown "a willingness to commit the crime" as demonstrated by a "ready response to the inducement." *Salerno*, 66 F.3d at 548 (citation and internal quotation marks omitted).

Even if Petitioner could show that his counsel's conduct in failing to inform him of an entrapment defense was somehow deficient, he fails to show that he suffered prejudice under the second *Strickland* prong. When a petitioner claims that he "would have pursued an [entrapment] defense but for his lawyer's erroneous advice" the *Strickland* "prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Kovacs v. United States*, 744 F.3d 44, 53 (2d Cir. 2014) (internal quotation marks and citation omitted). In light of the record here, as discussed above, it is unlikely that Petitioner would have been entitled to a jury instruction on entrapment, let alone that he would have succeeded on such a defense at trial. *See Camacho v. United States*, No. 13-CR-0058, 2018 WL 357312, *7 (S.D.N.Y. Jan. 10, 2018) (finding no prejudice in counsel's failure to advise the petitioner regarding defenses of entrapment and coercion when recommending he plead guilty where such defenses were unlikely to be successful).

## C.    Evidentiary Hearing

Petitioner asks the Court to conduct an evidentiary hearing, arguing that a hearing would "illuminate the Honorable Court to possibly correct an egregious miscarriage of justice by the actions of [Petitioner's] counsel convincing him to plead guilty to a charge purely constructed by the [UC]."  Dkt. No. 64 at 3.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."  28 U.S.C. § 2255(b).  However, "[t]he filing of a § 2255 motion does not, by itself, obligate the district court to conduct an evidentiary proceeding."  *Smith v. United States*, No. 1:20-CV-04195, 2020 WL 13065428, *4 (S.D.N.Y. Dec. 31, 2020), *R&R adopted*, 2022 WL 443631 (S.D.N.Y. Feb. 14, 2022) (citing *Newfield v. United States*, 565 F.2d 203, 207 (2d Cir. 1977)).  "'[A]n evidentiary hearing is required on a [§] 2255 motion only when the papers on the motion, measured by the same standards of competence and admissibility applicable to motions for summary judgment, reveal the existence of a genuine issue of material fact.'"  *United States v. Sahabir*, 880 F. Supp. 2d 377, 383 (N.D.N.Y. 2012) (quoting *Lamberti v. United States*, 22 F. Supp. 2d 60, 71 (S.D.N.Y. 1998), *aff'd*, 201 F.3d 430 (2d Cir. 1999)).

"An evidentiary hearing is not required 'where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous.'"  *Id.* (quoting *United States v. Malcolm*, 432 F.2d 809, 812 (2d Cir. 1970)); *see Haouari v. United States*, 510 F.3d 350, 354 (2d Cir. 2007) ("[I]n order to warrant an evidentiary hearing in the district court on a . . . § 2255 petition, 'the application must contain assertions of fact that a respondent is in a position to establish by competent evidence . . . .  Airy generalities, conclusory assertions and

hearsay statements will not suffice . . . .'") (citation and internal quotation marks omitted). "[E]ven if the motion presents factual issues, the district court has the authority to deny the motion without a hearing when the motion, any attached exhibits, and the record of the prior proceedings plainly show that the movant is not entitled to relief." *United States v. Handford*, No. 5:14-CR-0273, 2016 WL 8670498, *3 (N.D.N.Y. Oct. 25, 2016) (citing *Puglisi*, 586 F.3d at 214). "In determining whether the assertions in a § 2255 motion warrant discovery or a hearing, the court must also take into account admissions made by the defendant at his plea hearing, for '[s]olemn declarations in open court carry a strong presumption of verity.'" *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013) (quoting *Blackledge*, 431 U.S. at 74).

In the present matter, the Court finds no evidentiary hearing is necessary. Based upon the Court's review of the record, including Petitioner's plea allocution, the sentencing transcript, Mr. Stewart's declaration, and the relevant law, the Court is persuaded that "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Petitioner's self-serving statements which plainly contradict the record do not entitle him to a hearing. *See Stitsky v. United States*, No. 06-CR-357, 2018 WL 10741470, *6 (S.D.N.Y. Oct. 25, 2018) ("'Where, as here, a habeas court is faced with self-serving allegations that are contradicted by a credible affirmation [from] a trial attorney, it may choose to credit the attorney and dismiss the ineffective assistance of counsel claim without further hearings'") (quoting *Castrillo v. Breslin*, No. 01-CV-11284, 2005 WL 2792399, * 13-14 (S.D.N.Y. Oct. 26 2005)); *United States v. Salvagno*, No. 5:02-CR-0051, 2013 WL 12364812, *7 (N.D.N.Y. July 25, 2013)

("Because the files and record conclusively show that the § 2255 Motions are without merit, the Court finds that no evidentiary hearing is warranted").[4]

**D.    Certificate of Appealability**

28 U.S.C. § 2253(c)(1) provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a proceeding under section 2255." 28 U.S.C. § 2253(c)(1).[5]  A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

Since Petitioner has failed to make such a showing with regard to any of his claims, the Court declines to issue a Certificate of Appealability in this matter.  *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998).

### III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Petitioner's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255 (Dkt. No. 51) is **DENIED** and **DISMISSED**; and the Court further

**ORDERS** that no Certificate of Appealability shall be issued in this case; and the Court further

---

[4]  Petitioner asks that the Court "consider granting him an appointment of legal counsel" for purposes of his § 2255 motion. *See* Dkt. No. 51 at 6.  The Court declines. *See Pena v. United States*, No. 09-CR-341, 2024 WL 2159980, *2-3 (S.D.N.Y. May 14, 2024) (setting forth the legal standard for the appointment of counsel in connection with a § 2255 motion and declining to do so because the petitioner failed to make "'a threshold showing of some likelihood of merit'") (citation omitted).

[5]  Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b)(1).

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall close Case No. 8:25-CV-1189-MAD.

**IT IS SO ORDERED.**

Dated: May 13, 2026
      Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

24